IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEFF HANLON, individually and on behalf of all others similarly situated,
Plaintiff,

v.

PALACE ENTERTAINMENT HOLDINGS, LLC; FESTIVAL FUN PARKS, LLC; and DOES 1 through 10,
Defendants.

Civil Action No. 11-987

MEMORANDUM

Gary L. Lancaster,
Chief Judge.

January 3, 2012

This is an action alleging violations of the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681 et seq. ("FACTA"). Plaintiff, Jeff Hanlon, alleges on behalf of himself and all others similarly situated, that amusement parks operated by defendants Palace Entertainment Holdings, LLC, Festival Fun Parks, LLC, and unknown defendants Does 1 through 10 (together, "Palace"), violated FACTA by printing receipts at point of sale terminals which contained the expiration dates of customers' credit and debit cards. Before the court is the parties' Joint Motion for Preliminary Approval of Class Action Settlement. [Doc. No. 24.]

For the reasons set forth below, the motion will be granted.

## I. BACKGROUND

Hanlon alleges that Palace violated FACTA as late as July, 2011. Specifically, he alleges that Palace willfully used cash registers and other devices at the point of sale which electronically printed receipts containing more than five digits of customers' credit or debit card numbers, or the cards' expiration dates. The conduct alleged constitutes a violation of 15 U.S.C. § 1681c(g)(1).

The case was designated for this court's Alternative Dispute Resolution program, and mediated in front of Mark R. Hornak, an experienced mediator in complex litigation who has since ascended to the federal bench. During a full day mediation session held on October 26, 2011, the parties reached a resolution on all but minor terms. That resolution was memorialized in a Class Action Settlement Agreement executed on December 9, 2011. [Doc. No. 24, Ex. 1].

As part of this resolution, the parties agreed to certification of a class consisting of:

> All persons who received electronically printed receipts at any Participating Palace Park at the point of sale or transaction in a transaction occurring between December 4, 2006 and the Preliminary Approval Date wherein the receipt

> displayed: (1) more than the last five digits of that person's credit card or debit card number, and/or (2) the expiration date of that person's credit card or debit card number. Expressly excluded from the class is any individual whose identity was stolen as a result of the conduct being challenged in the underlying lawsuit.

[Id., § 1.5].

For the purposes of settlement, Palace acknowledges that fifteen of its forty amusement parks used equipment at the point of sale which was not programmed to properly truncate the entire expiration date from credit and debit card receipts. The equipment in question was in use for a period between December 4, 2006 and August, 2011. Approximately 1,844,066 receipts were presented to customers in this manner. Although the class covers such persons, do not admit that any customer received a receipt containing his or her entire card number. Palace also disputes that the violation was willful. The parties agree that neither Hanlon, nor any putative class member suffered actual monetary injury as a result of the FACTA violations.

The parties have further agreed to enter into, and submit to this court, a consent decree requiring Palace to remain in full compliance with the applicable FACTA provisions. In addition, Palace will provide participating class members with one free admission ticket to the amusement park which printed their defective receipt, redeemable at any date on which the park is open between June 1, 2012 and June 28, 2012 or

between September 4, 2012 and September 30, 2012. If fewer than 60,000 participating class members submit claims, Palace will provide admission tickets to its customers and to children's charities until 60,000 tickets have been distributed. Palace has also agreed to pay class counsel's attorneys' fees and costs in an amount not exceeding $390,000.00. Finally, Palace has agreed to pay Hanlon an incentive payment of $2,500.00.

## II. LEGAL STANDARD

When seeking class certification, the plaintiff bears the burden of proving that the action satisfies all of the requirements of Federal Rule of Civil Procedure ("Rule") 23(a) and at least one of the requirements of Rule 23(b). Johnston v. HBO Film Mgmt. Inc., 265 F.3d 178, 183-184 (3d Cir. 2001). Pursuant to Rule 23(a), a class may only be certified if the following factors are present: (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law or fact exist that are common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Plaintiff seeks certification under Rule 23(b)(3), under which certification is proper where "the court finds that

the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Although a class certification decision requires a thorough examination of the factual and legal allegations, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (internal quotation omitted). The United States Court of Appeals for the Third Circuit has stressed that "regardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23." In re Cmty. Bank of N. Va., 418 F.3d 277, 300 (3d Cir. 2005). "In making this analysis, the district court may take the terms of the proposed settlement into consideration. The central inquiry, however, is the adequacy of representation." Id.

## III. DISCUSSION

As an initial matter, the parties have noted that both courts in the Western District of Pennsylvania and our sister

courts have granted class certification for violations of FACTA in numerous cases since the statute's passage. See, e.g., Klingensmith v. Max & Erma's Restaurants, Inc., No. 07-cv-318, 2007 WL 3118505 (W.D. Pa. Oct. 23, 2007). Although these cases are not dispositive, and most are not even published, they strongly suggest that cases brought to remedy FACTA violations involve factual and legal circumstances which make them particularly amenable to class certification.

A. Rule 23(a)

The court of appeals has noted that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." In re Cmty. Bank, 418 F.3d at 302 (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 799 (3d Cir. 1995)). In order for a class to be certifiable under Rule 23(a), it must meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Id. If the court finds that the proposed class satisfies the four requirements of Rule 23(a), the court must determine whether the class fits within one of the categories set forth in Rule 23(b). Id. Here, the parties seek certification pursuant to Rule 23(b)(3), which requires the court to examine whether common questions of law or fact

predominate and whether "the class action mechanism is the superior method for adjudicating the case." Id.

1. Numerosity

According to the parties, customers at fifteen of Palace's amusement parks received approximately 1,844,066 receipts which violated FACTA due to their inclusion of part or all of the cards' expiration dates. This is clearly numerous enough to make joinder impracticable. See In re Cmty. Bank, 418 F.3d at 303 (44,000 putative class members satisfies numerosity); Klingensmith, 2007 WL 3118505 at *1 (approving final settlement in FACTA class action involving 225,000 defective receipts).

2. Commonality and Typicality

The court of appeals has advised that "[t]he concepts of commonality and typicality are broadly defined and tend to merge." In re Cmty. Bank, 418 F.3d at 303 (quoting Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)). "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." Id. This case could be a textbook example of commonality and typicality. The relevant facts - that Hanlon received a receipt at the point of sale containing his expiration date - are straightforward and

common to the class sought to be certified in every material way, particularly because the class excludes victims of identity theft. See Matthews v. United Retail, Inc., 248 F.R.D. 210, 215 (N.D. Ill. 2008) (finding that "defendant's issuance of receipts that display the expiration date" provides a "common nucleus of operative fact" sufficient to satisfy Rule 23(a)(2) and that the claims were typical of those of the entire class).

3. Adequacy

Rule 23(a)(4) requires that plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" Beck v. Maximus, Inc., 457 F.3d 291, 296 (3d Cir. 2006) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)). It "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." Id. (quoting Baby Neal, 43 F.3d at 55). Adequacy thus actually encompasses two distinct inquiries designed to protect the interests of absent class members. In re Cmty. Bank, 418 F.3d at 303. Specifically, "it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." Id.

(quoting In re Gen. Motors Corp., 55 F.3d at 800); Allen v. Holiday Universal, 249 F.R.D. 166, 180 (E.D. Pa. 2008).

There is no apparent conflict of interest between Hanlon and the class, and given the similarities between the claims, as discussed above, Hanlon is an adequate class representative. In addition, Hanlon's counsel are experienced consumer advocates, who also have brought several cases alleging FACTA violations, and therefore are familiar with the legal and factual issues involved. The adequacy requirement of Rule 23(a)(4) has been met.

B. Rule 23(b)(3)

Class certification pursuant to Rule 23(b)(3) requires the court to determine whether common questions of law or fact predominate and whether "the class action mechanism is the superior method for adjudicating the case." In re Cmty. Bank, 418 F.3d at 302.

1. Predominance

"The predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." Id. at 308-09. "A proper predominance inquiry 'trains on the legal or factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement.'" Id. (quoting Amchem, 521 U.S. at 624). Thus, "[i]n this vein, a predominance analysis 'is similar to the

requirement of Rule 23(a)(3) that claims or defenses of the named representatives must be typical of claims [or] defenses of the class.'" Id. (quoting Amchem, 521 U.S. at 623 n.18). Again, the factual scenario underlying the class's claims are identical in nearly all relevant respects. The court finds that common questions of law or fact "predominate over any questions involving individual class members." Fed. R. Civ. P. 23(b)(3).

2. Superiority

The superiority inquiry requires the court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." In re Cmty. Bank, 418 F.3d at 309 (citations and internal quotations omitted).

The superiority of a class action suit for violations of FACTA has been seriously questioned. See Leysoto v. Mama Mia I., Inc., 255 F.R.D. 693, 699 (S.D. Fla. 2009) (finding individual actions to be superior methods of adjudication); Najarian v. Avis Rent A Car Sys., No. 07-588, 2007 WL 4682071 at *5 (C.D. Cal. June 11, 2007) (finding that statutory damages for FACTA violations would violate defendant's due process rights). Courts' concerns arise from the nature of the remedy the statute provides; it awards substantial statutory damages of between $100 and $1,000 per violation but does not require the plaintiff to prove any monetary harm at all. This could result in

"potentially annihilating statutory damages to be awarded against a defendant business" despite the plaintiff having suffered no ill effects at all. Leysoto, 255 F.R.D. at 698.

However, the U.S. Court of Appeals for the Ninth Circuit has disagreed, overruling the contrary precedent in its jurisdiction and holding that the amount and proportionality of potential damages should not be considered for purposes of certification. Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 722-23 (9th Cir. 2010). See also Murray v. GMAC Mort. Corp., 434 F.3d 948, 953 (7th Cir. 2006) (reasoning that "[t]he reason that damages can be substantial . . . does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person" for violations of Fair Credit Reporting Act).

At any rate, this case is distinguishable because the parties have already negotiated a settlement, on which they now seek approval. According to the parties' proposed Settlement Agreement, the average retail price of the admission tickets is $27.58. Given the estimated 1,844,066 violative receipts distributed by Palace, this effectively caps Palace's maximum exposure at $50,859,340.28 as measured by retail price. In reality, the marginal cost of allowing free admission on days when the park is already open is much less and may well be

offset by the sale of concessions and other items to the attendees.

Instead, this case represents an action in which the potential damages obtainable by an individual - as low as $100 by statute and capped at $1,000 - are likely too low to incentivize suit. See Fed. R. Civ. P. 23(b)(3)(A) (listing "class members' interests in individually controlling the prosecution or defense of separate actions" as pertinent to the superiority analysis). Accordingly, the court finds that a class action is a superior method of adjudication, and the Rule 23(b)(3) requirement has been met.

C. The Proposed Settlement

Rule 23(e) provides that a class action may settle, be voluntarily dismissed, or compromise "only with the court's approval." Final approval of a settlement requires the court to hold a hearing, and to find that the settlement is "fair, reasonable, and adequate." Rule 23(e)(2). However, at this stage of the litigation, the court must only "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Manual for Complex Litigation (Fourth), § 21.632 (2011). Accordingly, the question is not whether the settlement merits final approval but whether it "discloses

grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." Mehling v. New York Life Ins. Co., 246 F.R.D. 467, 472 (E.D. Pa. Oct. 24, 2007) (citations omitted). The court must not reach ultimate conclusions on law and fact at this stage of the litigation. Id. "A common inquiry is whether the proposed settlement is the result of arms-length negotiations." Id. (internal quotation omitted).

Both parties submit that the settlement meets the requirements for preliminary approval. It was the product of an arms-length negotiation, conducted in good faith in front of an experienced and respected mediator. The court does note that the court of appeals has criticized "coupon settlements." In re Gen. Motors Corp., 55 F.3d at 808. However, class members have suffered no actual damages from Palace's conduct, and their enthusiasm for Palace's parks is unlikely to have been dampened as result. In addition, unlike in In re General Motors Corp., the ticket is for the full price of admission, not merely "redeemable toward the purchase" of an expensive product. Id. at 780. The parties also stated at the preliminary approval hearing that the allegedly violative receipts were presented at a variety of terminals, including for food and merchandise

purchases. Thus, a large family is likely to receive multiple tickets from this settlement, depending on the number of transactions they engaged in at Palace's parks. This lessens the concern that a free ticket would force a family to buy additional tickets in order to take advantage of the settlement.

In sum, the relief appears well suited to the alleged violations. The court finds that the settlement merits preliminary approval.

D. The Proposed Notice

The parties propose publication notice to inform the class members of the certification of the class and the preliminary approval of the proposed settlement. The parties argue that direct mail notice would be untenable. They argue that the names and mailing addresses of putative class members are distributed across multiple databases and, moreover, are in the custody of the banks responsible for issuing the debit and credit cards in question. They argue that the banks would be reluctant to release this information in the absence of a court order. They argue further that direct mail in general would be prohibitively expensive.

In its stead, the parties propose two forms of publication. The first is a single publication of summary notice in USA Today, on a weekday of Palace's choosing. The summary notice will direct class members to a website containing

a full, long-form notice. The second is a promotional advertisement to be sent via email to former Palace customers who have signed up to receive such email promotions. The email will direct recipients to the same website. Palace has estimated that the database contains over 511,000 email addresses.

Rule 23(e)(1) provides that this court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2) requires that, where a class is certified pursuant to Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must state "clearly and concisely" the nature of the action, the class definition, the claims, issues, and defenses, their right to appear through counsel, their right to opt-out and the process to do so, and the binding effect of a judgment.

The court has reviewed the parties' submissions and finds that the proposed notice substantially complies with Rule 23(c)(2) and Rule 23(e).[1] Nationwide publication is necessary

---

1 In fact, both the summary notice and full notice comply substantially with the "illustrative" forms of Class Action Notices developed by the Federal Judicial Center. See Federal Judicial Center, The Federal Judicial Center's "Illustrative" Forms of Class Action Notices, http://www.fjc.gov (last visited Dec. 20, 2011).

because Palace's parks are distributed across the country. Publication in USA Today has been approved where it is paired with more direct forms of notice. See In re TD Ameritrade Account Holder Litig., No. 07-2852, 2011 WL 4079226 at *10 (N.D. Cal. Sept. 13, 2011) (finding publication of summary notice in USA Today paired with delivery of summary notice via email or postcard to be best notice practicable). Here, the use of Palace's email promotional databases provides a direct avenue to the persons most likely to be potential class members. The court finds that this is the best notice practicable under the circumstances.

E. Appointment of Class Counsel

Pursuant to Rule 23(g)(1), "a court that certifies a class must appoint class counsel." In appointing counsel, the court must consider: (1) the work counsel has done in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigations, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

The court finds that Carlson Lynch Ltd, R. Bruce Carlson, and Gary F. Lynch are qualified to "fairly and adequately represent the interests of the class" as required by

Rule 23(g)(1). The biographies and detailed list of representative cases counsel have submitted are sufficient to convince the court that they are well-qualified to handle consumer class actions in general, and class actions under this statute in particular. Accordingly, the court will appoint Carlson Lynch Ltd, R. Bruce Carlson, and Gary F. Lynch as class counsel.

## IV. CONCLUSION

For the reasons set forth above, the Joint Motion for Preliminary Approval of Class Action Settlement [Doc. No. 24] will be granted.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEFF HANLON, individually and on behalf of all others similarly situated,
Plaintiff,

v.

PALACE ENTERTAINMENT HOLDINGS, LLC; FESTIVAL FUN PARKS, LLC; and DOES 1 through 10,
Defendants.

Civil Action No. 11-987

ORDER

Therefore, this 3rd day of January, 2011, IT IS HEREBY ORDERED that the Joint Motion for Preliminary Approval of Class Action Settlement [Doc. No. 24] is GRANTED as follows:

1. Class Certification: Civil Action No. 11-987, styled Jeff Hanlon v. Palace Entertainment Holdings, LLC, shall be maintained as a class action on behalf of the following class of plaintiffs:

> All persons who received electronically printed receipts at any Participating Palace Park[1] at the point of sale or transaction in

---

[1] As agreed to by the parties, the Participating Palace Parks are as follows: (a) Idlewild & SoakZone (Ligonier, Pennsylvania); (b) Kennywood (West Mifflin, Pennsylvania); (c) Sandcastle (Pittsburgh, Pennsylvania); (d) Raging Waters (San Dimas, California); (e) Waterworld (Concord, California); (f) Castle Park (Riverside, California); (g) Big Kahuna's (Destin, Florida); (h) Silver Springs (Silver Springs, Florida); (i) Wild Waters (Silver Springs, Florida); (j) Sea Life Park (Waimanalo, Hawaii); (k) Emerald Pointe Wet n' Wild (Greensboro, North Carolina); (l) Mountain Creek (Vernon, New Jersey); (m) Splish Splash (Calverton, New York); (n) Water Country

a transaction occurring between December 4, 2006 and the Preliminary Approval Date wherein the receipt displayed: (1) more than the last five digits of that person's credit card or debit card number, and/or (2) the expiration date of that person's credit card or debit card number. Expressly excluded from the class is any individual whose identity was stolen as a result of the conduct being challenged in the underlying lawsuit.

2. Class Representative and Class Counsel: Jeff Hanlon is designated as Class Representative and Carlson Lynch Ltd, R. Bruce Carlson, and Gary F. Lynch are designated as Class Counsel.

3. The Court concludes that the proposed class meets the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure: (a) the proposed class is ascertainable and so numerous that joinder of all members of the class is impracticable; (b) there are questions of law or fact common to the proposed class, and there is a well-defined community of interest among members of the proposed class with respect to the subject matter of this litigation; (c) the claims of Class Representative are typical of the claims of the members of the proposed class; (d) Class

(Portsmouth, New Hampshire); and (o) Lake Compounce (Bristol, Connecticut).

Representative will fairly and adequately protect the interests of the members of the class; (e) a class action is superior to other available methods for an efficient adjudication of this controversy; (f) Class Counsel are qualified to serve as counsel for the Class Representative in his own capacity as well as his representative capacity and for the class; and (g) common issues will likely predominate over individual issues.

4. The parties have presented a proposed settlement to this court for preliminary review. Upon such preliminary review, the proposed settlement appears to be within the range of reasonableness and accordingly shall be submitted to the class members for their consideration and for hearing under Federal Rule of Civil Procedure 23. The terms of the settlement are as follows:

> Palace, according to the terms, conditions, and procedures set forth in [the parties'] Settlement Agreement, shall provide to each Participating Claimant one (1) Free Admission Ticket to one (1) specifically-named Participating Palace Park, with an estimated average retail price of $27.58.

5. The parties have also presented for review a plan to provide notice to the class of the terms of the settlement and the options available to class

members. The parties will publish in USA Today on a day of defendants' choosing, other than Saturday and Sunday. The parties will also send a promotional advertisement by email to defendants' customers who have registered to receive email announcements from defendants, directing them to a website containing information about the settlement terms and available options. The court finds that the notice proposed by the parties is the best practicable under the circumstances.

6. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the proposed settlement is preliminarily approved.

7. Notice of the proposed settlement and the rights of class members shall be given by notice consistent with the terms of the proposed settlement by December 30, 2011.

8. Class Counsel shall file a Motion for Fees and Costs on or before January 6, 2012.

9. Defendants shall be entitled to take discovery relevant to any objections to Class Counsel's Motion for Fees and Costs, on or before February 13, 2012.

10. Any objections to Class Counsel's Motion for Fees and Costs shall be filed on or before March 5, 2012.

11. A hearing shall be held before this court on Friday, March 30, 2012, at 1:30 p.m. in Courtroom 3A, 3rd Floor, United States Courthouse, Pittsburgh, Pennsylvania, to consider whether the settlement should be given final approval by the court:

(a) Written objections by class members to the proposed settlement will be considered if received by the court, Class Counsel, and counsel for defendants on or before February 13, 2012;

(b) At this hearing, class members may be heard orally in support of or, if they have timely submitted written objections, in opposition to the settlement;

(c) Class Counsel and counsel for defendants should be prepared at the hearing to respond to objections filed by class members and to provide other information as appropriate, bearing on whether or not the settlement should be approved;

(d) Objections to Class Counsel's Motion for Fees and Costs, including any evidence related thereto, shall be also considered.

BY THE COURT,

Hon. Gary L. Lancaster,
Chief United States District Judge

cc: All Counsel of Record